IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| United States of America, | CRIMINAL NO. 3:12-853-CMC |
| v. | **OPINION and ORDER** |
| Paul D. Pomfret, | |
| Defendant. | |

Defendant, proceeding *pro se*, seeks relief in this court pursuant to 28 U.S.C. § 2255. Defendant raises issues relating to alleged ineffective assistance of counsel. The Government filed a motion for summary judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Defendant of the summary judgment procedure and the consequences if he failed to respond. Defendant has responded to the Government's motion and this matter is ripe for resolution.

### I. BACKGROUND

On November 7, 2012, a federal grand jury returned a one-count Indictment charging Defendant with wire fraud in violation of 18 U.S.C. § 1343. On May 22, 2013, Defendant entered into a Plea Agreement with the Government in which he agreed to plead guilty to the charge. On May 23, 2013, Defendant appeared with counsel before the court and, after a thorough Rule 11 hearing, pleaded guilty to Count 1.

A Presentence Report (PSR) was prepared in anticipation of sentencing. Defendant's counsel filed objections to the original draft of the PSR relating to, *inter alia*, Defendant's designation as an "investment advisor" (leading to a 2-point enhancement under U.S.S.G. § 2B1.1(b)(18)(A)(iii)). Based upon counsel's argument and a review of authority, this enhancement

1

was not included in the revised PSR relied upon by the court at sentencing. However, the Probation Office did include a separate enhancement under U.S.S.G. § 3B1.3 for abuse of trust. Counsel filed objections to this enhancement on September 6, 2013.

On September 12, 2013, Defendant appeared with counsel for sentencing. The court heard arguments regarding Defendant's objection to the abuse of trust enhancement. Sentencing Tr. at 9-25, ECF. No. 59. After considering arguments for and against the enhancement, the court overruled Defendant's objection and found the enhancement applicable based upon Defendant's fiduciary position with PDF Growth Fund, LP. *Id*. at 25-29.

After hearing from Defendant's mitigation witnesses, certain victims and Defendant himself, the court imposed a sentence of 63 months' imprisonment, to be followed by three (3) years' supervised release, and ordered restitution in the amount of $ 1,631,090.00. The imprisonment sentence imposed was at the top of the Guideline range. The court noted that even if Defendant's objection to the abuse of trust enhancement had been sustained, the court would have imposed the same sentence due to the seriousness of Defendant's offense, the time period involved, and the number of persons affected by Defendant's actions. *Id*. at 67.

After imposing sentence, the court advised Defendant of his appeal rights in light of his waiver of appeal contained in his plea agreement, including his right to appeal even if he and counsel disagreed as to whether an appeal should be filed. *Id*. at 73.

Defendant did not appeal his conviction or sentence. On August 18, 2014, the Clerk of Court received Defendant's timely motion for relief under 28 U.S.C. § 2255.

## II. STANDARD

Defendant contends he received ineffective assistance of counsel during various stages of his case. The standard governing ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to succeed on such a claim, Defendant must first show that his counsel's performance was "deficient," *Strickland*, 466 U.S. at 687-88, and that such deficiency resulted in actual prejudice to Defendant. *Id*. As to the first prong of the *Strickland* test, a defense attorney's conduct is deficient if it fails to meet a standard of "reasonably effective assistance." *Id*. at 687. A reviewing court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. *See also Lockhart v. Fretwell*, 506 U.S. 364, 371-72 (1993).

The same two-part test applies in the context of cases in which a defendant entered a guilty plea. But because "[p]lea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks," strict adherence to the deferential *Strickland* standard is "all the more essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S.115, 131 S. Ct. 733, 741 (2011). To establish prejudice in the context of a guilty plea Defendant must show that "there is a reasonable probability that, but for counsel's error, [Defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "The added uncertainty that results when there is no extended formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance." *Premo*, 562 U.S. at ___, 131 S. Ct. at 745.

3

An analysis of an ineffective assistance of counsel claim can initially focus on the prejudice prong of the *Strickland* test, as "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

### III. DISCUSSION

As noted by football legend Vince Lombardi, "[f]ootball is a great deal like life in that it teaches that work, sacrifice, perseverance, competitive drive, selflessness and respect for authority is the price that each and every one of us must pay to achieve any goal that is worthwhile."[1] In this instance, "any goal that is worthwhile" would have been for Defendant to invest funds entrusted to him by investors as he represented he would. Instead, Defendant orchestrated and executed a scheme to defraud investors of money they placed with him for investment. Despite Defendant's current protestations and over 600 pages of materials submitted for this court's review in support of his motion for relief, understanding and defending Defendant's crime – wire fraud – required relatively little knowledge of the financial industry or securities regulation. Simply put, Defendant, through corporate entities which he personally controlled, made material misrepresentations to investors about companies he controlled, and instead of investing monies entrusted to him as promised, used these funds to pay off other investors clamoring to redeem previous investments and to pay himself.

Defendant presents a variety of allegations relating to counsel's representation throughout the criminal proceedings in this court. For example, Defendant maintains counsel was ineffective

---

[1] Vince Lombardi, as quoted on http://www.vincelombardi.com/quotes.html (last visited Jan. 7, 2015).

in: advising him (Defendant) as "to [the] sentence and enhancements that came with the plea," Mot. for Relief at 15, ECF No. 60; failing to negotiate a "reasonable" plea agreement, *id.* at 11; operating under a "conflict of interest" due to counsel's heavy work load and factors relating to counsel's status as head Federal Public Defender for the District of South Carolina; failing to file a sentencing memorandum and adequately investigate and present mitigating factors at sentencing; failing to properly understand factual issues relating to "the [f]inancial [i]ndustry," *id.* at 11; and failing to properly represent Defendant because he (counsel) believed Defendant to be guilty and, accordingly, counsel "could not properly represent him as being innocent[,]" Mot. to Amd., ECF No. 71.

Several of the above-noted allegations fail based upon Defendant's own statements made under oath at his guilty plea hearing. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74, (1977). "[R]epresentations of the defendant . . . at [plea] hearing[s] . . . constitute a formidable barrier in any subsequent collateral proceedings," *id.* at 73-74, because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir.2003); *see Crawford v. United States*, 519 F.2d 347, 350 (4th Cir.1975) ( "[T]he accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so." ), *partially overruled on other grounds by United States v. Whitley*, 759 F.2d 327 (4th Cir.1985) (en banc). Defendant specifically admitted under oath at his Rule 11 hearing that he understood the maximum statutory penalty for his offense, that he understood that any estimation given to him by counsel of an advisory sentencing guideline range was not a guarantee of what sentence he would receive, that the sentence range upon which his sentence would

be based would be determined at sentencing once the court had reviewed the PSR and ruled upon objections, and that any stipulations or agreements contained in the plea agreement were binding on the parties but not on the court or Probation Office (who would prepare the PSR). *See generally* Tr. of Plea Hearing, ECF No. 59.

Defendant contends that counsel also failed to negotiate a "reasonable" plea agreement, Mot. at 2, ECF No. 60, and that counsel "promised" him that he would receive a sentence of no more than 40 months' imprisonment "as agreed upon at the plea[,]" *id.* at 15.[2] Defendant maintains that his "guilty plea is not knowing and [was] involuntarily entered when he was not aware that his sentence would exceed 40 months. Had he known this he would not have plead guilty." *Id*.

In response to Defendant's allegations, Parks Small, attorney for Defendant, avers that he worked on Defendant's case for approximately 283 hours. Aff. of Parks Small at 1, ECF No. 76. Additionally, counsel "denies any such statement [promising a sentence of 40 months' imprisonment]. Counsel did advise that if the [PSR] was written with no enhancements [Defendant's] estimated guideline would be . . . 41 to 51 months . . . ." Aff. of Parks N. Small at 3, ECF No. 76. Defendant offers no attestation or declaration to contradict counsel's affidavit, but rather maintains that "had [he] been aware of [counsel's alleged conflict of interest] and counsel['s] alleged unreasonable performance or lack of performance he would have retained new effective conflict free counsel to assist him in these criminal proceedings." Traverse at 14, ECF No. 81. *See also id*. at 6.

---

[2] Defendant does not define "reasonable." The statutory penalty associated with Defendant's crime of conviction was up to 20 years' imprisonment.

Defendant has made no showing whatsoever that his attorney rendered ineffective assistance of counsel in either negotiating the plea agreement or advising him as to possible penalties, or that absent counsel's alleged infirmities, he would have proceeded to trial. Defendant has provided no evidence, nor does he even allege, that counsel would have had any reason to believe Defendant did not or could not understand the court's comprehensive Rule 11 proceeding, where he was questioned about, and admitted under oath, that he understood the penalties associated with his crime and the way his sentence would be determined.[3] The court explained at Defendant's guilty plea that counsel may have tried to predict what Defendant's sentence might be, but that until the PSR was prepared, arguments were presented, and the court ruled on any arguments at sentencing, counsel could not know what Defendant's exact sentence would be. Defendant acknowledged under oath that he understood. *See* Tr. of Plea Hrg. at 12.

Defendant also maintains counsel failed to investigate and present evidence in mitigation or file a sentencing memorandum. However, Defendant provides no relevant argument or evidence that could have materially altered the sentence imposed. Defendant now contends he suffers some unspecified second-hand trauma from the recent child molestation scandal at Penn State University (where he played football) and continues to refer to the trauma of losing many friends in the terrorist attacks in New York on September 11, 2001. Neither of these circumstances nor any generalized background information of Defendant (school records, general medical records) would have warranted a downward departure under the Guidelines or a downward variance sentence in this case.

---

[3] To the extent Defendant makes a separate claim that his guilty plea was not knowing and voluntary, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

7

As to counsel's purported conflict of interest, Defendant's conclusory allegations are unsupported. Defendant argues that counsel did not believe him (Defendant) to be innocent. Counsel avers that he "reviewed all the evidence in [Defendant's] case, including his statements to counsel about his conduct [leading to] the charges in the indictment." Aff. at 4, ECF No. 76. Based upon this review and Defendant's statements to counsel, counsel's "recommendation [to Defendant on how to proceed] was based on professional evaluation of the evidence, not what counsel may have thought about his client's culpability." *Id*. Although Defendant makes conclusory assertions to the contrary, he fails to establish that counsel operated under any "conflict" resulting in ineffective assistance of counsel.

Defendant makes several assertions regarding counsel's actions on sentencing enhancements applied in this case. First, he contends counsel failed to present a challenge to the enhancement for sophisticated means. Second, he argues counsel failed to adequately argue against the enhancement for abuse of trust. Finally, in relation to these contentions, Defendant argues that counsel was ineffective in failing to raise breach of the plea agreement by the Government because (he appears to argue) the Government agreed to a deal where no Guidelines enhancements would be applied.

Counsel presented arguments at sentencing which showed a thorough understanding of the circumstances of the case. Counsel agrees in his affidavit that he presented no opposition to the sophisticated means enhancement because "counsel did not view the challenge as being successful under the facts of the case involving mismanagement by [Defendant] of numerous business entities, transactions, funds, and bank accounts over which [Defendant] was exercising control in his position as a hedge fund manager." Aff. at 1, ECF No. 76. *See United States v. Rice*, 551 F. App'x 656, 656 (4th Cir. 2014) (finding sophisticated means enhancement appropriate when defendant "did not

conduct any real investing or any legitimate business. Instead, [the defendant's investment corporation] existed solely so that [the defendant] could hide from the investors the transactions in which he paid his old business debts and personal expenses."). Defendant presents no argument or evidence to show the application of this enhancement was legal error, beyond his conclusory assertions that "his crime involved 'unsophisticated means'. . . ." Traverse at 15, ECF No. 81.

As to the abuse of trust enhancement, the court heard argument at sentencing regarding this enhancement and overruled Defendant's objection. Defendant fails to present a theory under which the court's application of this enhancement was legal error: Defendant does not even deny that he was a fiduciary to the fund in which investors placed their monies. Accordingly, this assertion is without merit as well.

Defendant's argument regarding an alleged breach of contract by the Government relating to the plea agreement is frivolous. As noted above, Defendant was advised at his Rule 11 hearing (and acknowledged under oath that he understood) that the statutory penalty for the offense was the maximum sentence which could be imposed, and that any potential Guideline range applicable to his case which may have been discussed by the parties was not binding upon the court or the probation office. For Defendant to contend he was either promised things not specifically provided for in his plea agreement or not to have understood what he acknowledged under oath he *did* understand strains credulity.

Defendant also argues counsel was ineffective in failing to provide "the report" of Nick Weir (Weir) to the court at sentencing. Weir was an acquaintance of Defendant's with an extensive background in hedge fund management and other investment portfolio issues who provided an analysis of certain issues presented in the PSR to defense counsel. *See* "Affidavit and Expert

Opinion" at 3, ECF No. 80-2 at 6 ("I have been asked to review the language in proposed sentencing guidelines that follows below and to offer an opinion on whether the activities of Mr. Promfret involved those activities that are identified in the guidelines[.]"). Defendant maintains that failure to present the report to the court resulted in him losing the opportunity "to use it to defend [Defendant] from the enhancements added by the Probation [O]ffice in the PSR[s] and [using it] at sentencing." Traverse at 10. Defendant argues that the report "show[ed] his innocence," *Id*. at 10, and that this report "would have revealed numerous flaws in the governments [sic] recommendations regarding the crime as well as en[hance]ments that would not have been applicable." *Id*. at 5.

Counsel indicates that while Weir was willing to testify on Defendant's behalf, "it was counsel's conclusion and it was generally understood that this expert friend could not be of any help in this matter as a fact witness." Aff. at 3, ECF No. 76.

Defendant's assertions are without merit. Weir's "report" does not purport to show Defendant's "innocence," and indeed Weir was not consulted until after Defendant's guilty plea and receipt of the initial draft of the PSR. *See* Traverse at 11 (indicating Defendant contacted Weir after August 7, 2013). Additionally, the report would not have negated the "governments [sic] recommendations" in the PSR, as any recommendations and calculations in the PSR are made by the Probation Office, not the Government.

As to the abuse of trust enhancement, Defendant's counsel had successfully argued against a classification in the first draft of the PSR of Defendant as an "investment advisor," which would have resulted in an enhancement under U.S.S.G. § 2B1.1(b)(18)(A)(iii). However, once this four-point enhancement was removed, an enhancement for abuse of trust under § 3B1.3 was added. Counsel filed an objection to that enhancement, but the objection was overruled at sentencing.

10

Defendant's arguments relating to the applicability of the abuse of trust enhancement are conclusory, merely repeating the mantra of errors and "false statements" in the PSR. None of Defendant's arguments or evidence submitted in support of his opposition to the Government's summary judgment motion provides a basis for this court to find ineffectiveness of counsel or prejudice.

Finally, Defendant maintains in his motion that counsel was ineffective in not filing a Direct Appeal and "coercing [Defendant], minutes after sentencing to sign a waiver to indemnify counsel from filing any appeal." Mot. for Relief at 15, ECF No. 60. In response, Small attests that he counseled against filing an appeal, "but also advised that an appeal would be filed if [Defendant] so requested. There was no request by [Defendant] or his family, who were present at the conversation regarding an appeal." Aff. of Parks Small at 4, ECF No. 76.

At sentencing, Defendant was specifically advised by this court that even though he had signed a plea agreement which included a waiver of his right to direct appeal, if he decided to seek an appeal, it must be accomplished by filing a written notice with the court within fourteen (14) days of entry of the judgment order. He was also advised that if he and counsel disagreed about whether an appeal should be filed, he could file his own appeal by filing notice with the Clerk of Court within the same fourteen (14) day period. Finally, Defendant was advised that if he could not afford an appellate attorney, one would be appointed for him. Tr. of Sentencing at 73, ECF No. 59.

Defendant offers no response to the assertion in Small's affidavit, nor does he offer any argument in his Traverse in reply to the Government's motion for summary judgment on these points. Therefore, this asserted ground of ineffectiveness is unsupported.

**IV. CONCLUSION**

11

For the above-noted reasons, as well as the reasons set forth in the Government's motion for summary judgment, which the court adopts, the Government's motion for summary judgment is **granted** and Defendant's motion for relief is dismissed with prejudice.

### CERTIFICATE OF APPEALABILITY

The governing law provides that:

(c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **denied**.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 21, 2015